## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                        )
**UNITED STATES OF AMERICA**            )
                                        )
**v.**                                  )          **CRIMINAL NO.  16-216 (ESH)**
                                        )
**JOSE ADRIAN ROQUE,**                  )
                                        )
          **Defendant.**                )
_____)

### DETENTION MEMORANDUM

This matter comes before the Court upon the application of the United States that Defendant, José Adrián Roque, be detained pending trial.  Defendant has been charged by Indictment with three counts of distribution of a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and one count of unlawful possession with intent to distribute fifty grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(viii).  A detention hearing was held on December 5, 2016.

Upon consideration of the proffers and arguments of counsel and the entire record herein, the Court ordered Defendant held without bail pursuant to 18 U.S.C. § 3142(e).  This memorandum is submitted in compliance with the statutory obligation that "the judicial officer shall . . . include written findings of fact and a written statement of the reasons for the detention."  18 U.S.C. § 3142(i)(1).  The findings of fact and statements of reasons in support of the Order of Detention follow.

## FINDINGS OF FACT

At the detention hearing, the United States proceeded by proffer based on the Indictment. The defense offered no contrary evidence.  Accordingly, the Court makes the following findings of fact regarding the government's investigation.

### A.      Three Confidential Sources Report Sales

In late 2014, a confidential source reported that Defendant was distributing methamphetamine from his residence near 14th and Euclid Streets N.W., Washington, D.C.  The informant claimed to have initially purchased half- and full-gram quantities of methamphetamine from Defendant, eventually purchasing 3.5 grams at a time.  These purchases occurred over the course of several months.

In early 2015, a second confidential source reported that Defendant was distributing methamphetamine from his residence.  This informant claimed to have met Defendant in 2014.  Like the first informant, the second claimed to have initially purchased smaller amounts of methamphetamine from Defendant before progressing to 3.5-gram quantities.  He claimed that Defendant shared with him plans to bring one pound of methamphetamine to the District of Columbia for distribution.  He claimed to have seen Defendant with such a quantity.

In spring 2015, a third confidential source reported that Defendant was distributing methamphetamine from his residence.  This informant claimed to have begun purchasing small amounts from Defendant in early 2015, and estimated that he had made thirty purchases from Defendant.

### B.      A Fourth Confidential Source Makes Controlled Purchases

In summer 2016, a fourth confidential source reported that Defendant was distributing methamphetamine from his residence, which the informant identified as 1421 Euclid Street N.W., Apt. 306.  Working with this informant, law enforcement arranged a series of controlled purchases, the weeks of August 1, September 4 and November 13, 2016.  On each occasion, Defendant agreed to sell the informant seven grams of methamphetamine, for $800, $850, and $900, respectively, and law enforcement provided the informant with that amount in recorded funds.  Law enforcement recorded each transaction digitally.  On each occasion, a preliminary field test of the substance the informant obtained from Defendant was positive for methamphetamine.

### C.      November 29, 2016 Search of Defendant's Residence

On November 29, 2016, law enforcement executed a search warrant at 1421 Euclid Street, N.W., Apt. 503.[1]  Defendant and a male visitor were present.

During the search, law enforcement seized four ounces of suspected methamphetamine, five ounces of suspected cocaine, zipper lock bags, suspected drug ledgers, scales and U.S. currency.  Law enforcement later concluded that some of the currency had been involved in one of the controlled purchases.

Also found inside the apartment was mail addressed to Defendant's previous address at Apt. 306.  In a backpack where some of the suspected methamphetamine was found, law enforcement found a wallet with credit and identification cards in Defendant's name.  In a safe where another quantity of suspected methamphetamine was found, law enforcement found a passport in Defendant's name.  Defendant was arrested.

---

[1] Defendant moved from Apt. 306 to Apt. 503 in early November, 2016.

D.      **Interrogation of Defendant**

Defendant agreed to speak with law enforcement without counsel after being advised of his *Miranda* rights.  He admitted that he had been distributing and using methamphetamine since approximately 2014.  He further admitted that, around that time, he had obtained a source of meth-amphetamine outside of the District of Columbia.  This source mailed to him increasingly large amounts of methamphetamine, eventually mailing one pound at a time.  He estimated that he received four pounds in all.  He admitted to distributing this methamphetamine in the District of Columbia and beyond.

At the end of 2015, Defendant lost contact with this first source and was introduced to another, whom he met in April 2016.  From this source, he received three packages containing in all 2.5 pounds of methamphetamine and eight ounces of cocaine.  Defendant admitted that the suspected methamphetamine and cocaine seized from his residence were what remained from the third package.

Finally, upon his arrest, Defendant was subjected to a drug test.  That test indicated that Defendant had recently used methamphetamine.

## DISCUSSION

A.      **Legal Standard**

The Bail Reform Act of 1984, 18 U.S.C. § 3142 *et seq.*, provides, in pertinent part, that if a judicial officer finds by clear and convincing evidence that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the [defendant] before trial."  18 U.S.C. § 3142(e).  Thus, even absent a flight risk, danger to the community alone

is sufficient reason to order pretrial detention.  *United States v. Salerno*, 489 U.S. 739, 755 (1987); *United States v. Perry*, 788 F.2d 100, 113 (3d Cir. 1986); *United States v. Sazenski*, 806 F.2d 846, 848 (8th Cir. 1986).  Where the judicial officer's justification for detention is premised upon the safety of the community, the decision must be supported by "clear and convincing evidence."  18 U.S.C. § 3142(f).  Where the justification for detention is the judicial officer's finding that no set of conditions will assure the defendant's appearance in court, such a decision must be supported by a preponderance of the evidence.  *See United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987).

Where there is probable cause to believe that the defendant has committed certain types of offenses, a rebuttable presumption arises that no pretrial release condition or combination of conditions may be imposed to reasonably assure the appearance of the person as required or the safety of the community if he were released.  *See* 18 U.S.C. § 3142(e)(3); *United States v. Mosuro*, 648 F. Supp. 316, 318 (D.D.C. 1986) (holding that a grand jury indictment established probable cause sufficient to create a rebuttable presumption under Section 3142(e)).  One such type of offense is an offense for which a maximum term of imprisonment of ten years or more is prescribed under the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*  18 U.S.C. § 3142(e)(3)(A).  Here, Defendant's distribution charges each carry a maximum penalty of twenty years' imprisonment.  21 U.S.C. § 841(b)(1)(C).  His possession with intent to distribute charge carries a maximum penalty of forty years' imprisonment.  21 U.S.C. § 841(b)(1)(B).  Each of these offenses is sufficient to trigger the rebuttable presumption under Section 3142(e)(3)(A).

Once the rebuttable presumption is triggered, it imposes a burden of production on the defendant "to offer some credible evidence contrary to the statutory presumption."  *See United*

*States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985).  As this Court recently emphasized, "[w]hile the burden of production may not be heavy, the applicable cases all speak in terms of a defendant's obligation to introduce 'evidence.'"  *United States v. Lee*, Crim. Action No. 16-0023-4 (ABJ), 2016 WL 3659892, at *3 (D.D.C. July 1, 2016) (citations omitted).  Thus, some actual evidence and not mere speculation must be offered to rebut the presumption.  In the face of the presumption, which "reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial," a defendant "should 'present all the special features of his case' that take it outside 'the congressional paradigm[.]'"  *United States v. Stone*, 608 F.3d 939, 945–46 (6th Cir. 2010) (quoting *United States v. Jessup*, 757 F.2d 378, 387 (1st Cir. 1985)); *see also United States v. Bess*, 678 F. Supp. 929, 934 (D.D.C. 1988) (finding that the presumption "represents Congress' general factual view about the special flight risks and the special risks of danger to the community presented by defendants who commit the crimes to which it attaches").

That said, the burden of persuasion on the issue of detention remains, as always, with the government.  *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001).  But even where the defendant offers evidence to rebut the presumption, the presumption is not erased.  Rather, the "presumption is incorporated into the other factors considered by this Court in determining whether to grant a conditional release and is given substantial weight."  *United States v. Ali*, 793 F. Supp. 2d 386, 291 (D.D.C. 2011); *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) (noting the Section 3142(e) presumption does not disappear when rebutted, but "remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)").

6

### B.      The Rebuttable Presumption

The Court finds that Defendant has not introduced sufficient evidence to rebut the presumption against him.  Defendant asserts that pretrial detention is unwarranted, and asks the Court to place him into the High Intensity Supervision Program at his ex-wife's Virginia residence.

Defendant argues that the fact that government funds from the controlled purchases were found in his apartment during its search indicates that he is a street-level distributor, whereas *Alatishe* concerns international drug rings.  He points out that the search of his apartment turned up no weapons or significant amounts of currency.  He points out that the transactions with the first three informants were not recorded, and argues that the evidence offered by the government does not establish the weight of methamphetamine recovered from the search of his apartment.  He claims a "long" history in the District of Columbia, although he has only resided in the area for three years.  He has two teenage daughters, who live with his ex-wife.  He has no criminal record.  Finally, Defendant points out that the government offered no argument that he constitutes a risk of flight.  He points out that he was under investigation for two years, and argues that this shows law enforcement did not consider him to be a sufficient risk to the community or risk of flight to arrest him during that time.

This is sufficient to overcome the presumption that a defendant may not appear as required, but it is not sufficient to overcome the presumption that he would represent a danger to the community if released.  Confining a drug dealer, addicted to methamphetamine, within a house with his ex-wife would give this court no confidence that Defendant would not continue to sell methamphetamine to support his own use.  As demonstrated below, however, detention would be required even had Defendant rebutted the presumption entirely.  Each of the four Section 3142(g)

factors would favor detention, especially when coupled with the weight of the rebutted presumption.

### C.       The Four Factors of Section 3142(g)

In determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, the judicial officer considers, in addition to the rebutted presumption:  (1) the nature and circumstances of the offense; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.  *See* 18 U.S.C. § 3142(g).

### 1.       *Nature and Circumstances of the Charged Offense*

The first factor, the nature and circumstances of the charged offense, favors detention.  This factor asks the Court to consider "the nature and circumstances of the offense charged" as a general matter, but points especially to instances where "the offense is a crime of violence, a violation of Section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device."  *Id.* § 3142(g)(1).

Here, the government established probable cause to believe Defendant unlawfully sold methamphetamine on several occasions.  This is a serious crime that represents a real danger to the community.  Reflecting the seriousness of the offense, Defendant faces a five-year mandatory minimum prison term, and up to forty years in prison if found guilty.  Indeed, the rebuttable presumption Congress created for Defendant's offenses reflects its judgment that persons who commit these offenses likely pose a substantial threat to the safety of the community.  *See* 18 U.S.C. § 3142(e)(3)(A); *Bess*, 678 F. Supp. at 934.

8

2.      *The Weight of the Evidence*

The Court finds that the weight of the evidence also favors detention.  The government's case against the defendant is strong.  The government digitally recorded three controlled purchases of methamphetamine and recovered a significant amount of the substance from his residence when it was searched.  That search additionally turned up the paraphernalia of narcotics commerce, including zipper-lock bags, a drug ledger and scales.  Subsequent to his arrest, Defendant admitted the general nature of his trafficking and described the sources from which he obtained his product.

3.      *The History and Characteristics of the Defendant*

This factor also supports detention.  Section 3142 directs the Court to consider:  (1) the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (2) whether, at the time of the current offense or arrest, the defendant was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under federal, state, or local law.  18 U.S.C. § 3142(g)(3)(A)–(B).

The Court appreciates Defendant's family ties and absence of a prior criminal record.  However, other elements of his history outweigh these considerations.  Defendant has only resided in the District of Columbia for three years.  In the past two years, he has travelled twice to Costa Rica and extensively in the United States, including trips to Puerto Rico, California, New York and Florida.  He is currently unemployed, suggesting that his methamphetamine trafficking was his exclusive source of income.  Further, he admitted that he is a user of methamphetamine, which he drug test subsequent to arrest confirms.  He appears to be selling drugs to support his own

methamphetamine addiction.

Given these factors, the Court finds that no release conditions could reasonably assure the appearance of the Defendant as required or the safety of the community if Defendant were to be released. Defendant has made no showing of any conditions that might assuage the Court's—or Congress'—concern about the likelihood of pretrial recidivism were he to be released. *See Stone*, 608 F.3d at 945–46. Certainly, given Defendant's addiction, the Court cannot reasonably place the burden of his supervision on his ex-wife—from whom Defendant was divorced eight years ago—as Defendant proposes.

### 4.       *The Danger to the Community*

The fourth factor, the danger to the community posed by the Defendant, weighs in favor of detention. The Court is cognizant that the drug involved in this case is extremely harmful to the user and to the community, which bears the cost of drug treatment programs and of the violence that often accompanies its use. The danger that Defendant may continue trafficking in methamphetamine were he released is further amplified by his lack of other means to support himself. Were he to be released—even under high intensity supervision—the Court has no confidence that he would not continue trafficking.

For these reasons, the Court believes that there is no condition or combination of conditions that would reasonably assure the safety of the community if Defendant were released.

**CONCLUSION**

Based on the consideration of all the evidence and the factors set forth in Section 3142(g), the rebuttable presumption under Section 3142(e)(3)(A), and all lesser restrictive alternatives to pretrial detention, the Court finds by clear and convincing evidence that no condition or combination of conditions exist that would reasonably assure the safety of any other person or of the community if Defendant were released.  Therefore, the government's motion for pretrial detention is granted.


Date:  December 9, 2016

                                            _____
                                            G. MICHAEL HARVEY
                                            UNITED STATES MAGISTRATE JUDGE

11